SANDERS, Justice
(dissenting).
I withheld my approval of the supervisory writ in this proceeding, because I entertained the view that relator had an adequate remedy by appeal. See La.Const. Art. 7, Sect. 29; LSA-R.S. 13:1591. The proceeding is now before us, however, and we must review the juvenile court judgment.
In a proceeding of this kind, a juvenile court has jurisdiction to take custodial ac *513 tion only if the court finds the child to be neglected. LSA-R.S. 13:1570, subd. A(1) (2); LSA-R.S. 13:1580; In re Robichaux, 211 La. 128, 29 So.2d 589; State v. McMillan, 191 La. 317, 185 So. 269.
The juvenile court judge made an explicit finding that the 11-year-old girl involved in this proceeding was neglected and adjudicated her a ward of the court. Although the majority does not specifically affirm the adjudication, such an affirmance is implicit in the disposition made, a custody award rather than a dismissal of the proceeding. I concur in the affirmance.
Strongly attacked is the 'custodial disposition made by the juvenile court judge. The law governing the disposition is found in the Juvenile Court Act, LSA-R.S. 13:1561-1592.
LSA-R.S. 13:1580 provides:
“If the court shall find that a child is within the purview of R.S. 13 -.1561 through 13 :1592, it may adjudge the child to be a neglected child or delinquent child or a child who is otherwise in need of the protection of the state. The court in its judgment may proceed as follows:
“(1) Place the child on probation or under supervision in his own home or in the care or custody of a suitable person elsewhere, upon such conditions as the court shall determine.
“(2) Assign the custody of the child to a public or private institution or agency authorized to care for children or to place them in family homes. In committing a child to a private institution or agency, the court shall select one that is approved by the state department of public welfare. Where no institution, social agency or association approved by the state department of public welfare for the care or placement of children is available to the court, the court may commit the child to some other institution, social agency or association, which, in the judgment of the court, is suitable for the care of such child. Said commitment may be for an indefinite period but in no case beyond the minority of the child.
“(3) Make such other disposition of the child as the court may deem to be for the best interests of the child, including commitment to a public mental hospital or institution for the mentally defective. Provided that nothing herein shall be construed as authorizing the removal of the child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal.
“(4) The court may dismiss the petition or otherwise terminate its jurisdiction at any time for good cause shown.”
In caring for a ward of the court, the juvenile court has broad discretion. State v. Traylor, 216 La. 193, 43 So.2d 469; In re Caronna, 197 La. 494, 2 So.2d 1.
*515 The juvenile court judge placed the child temporarily in St. Elizabeth’s Childrens Home, New Orleans, through the State Welfare Department. The judge’s well-written opinion so fully supports his disposition that I adopt it:
“The court is of the opinion that, at this time, based upon the testimony contained in the record and after considering all of the testimony and circumstances, the best interest of this child would be served by placing the child in a residential boarding school group setting in the metropolitan New Orleans area, until further orders of the court, as a temporary measure, consistent with the development of a plan for the return of the child with her parent at the earliest possible time provided the home of the said parent is conducive to the welfare of the said child. The rendition of an order by this court placing this child in such a setting is contrary to the wishes and request of the father of the minor child. The record will reflect that the father is seeking the custody of the said child.
“The court is of the opinion that, at this time, the mother of the child is unable to presently care for the needs of the said child who is, at this time, eleven years of age. The court in its deliberations talked with this child in the privacy of its chambers and in the presence of the lady with whom this child is presently residing, Mrs. C. Ellis Henican, Jr., outside of the presence of both counsel for the parties at interest, that is, counsel for the mother of the child, and counsel for the father of the child, and outside of the presence of any member of the Probation Department. This was done only after both counsel and the Probation Department was consulted and concurred with by them. While this court cannot render judgments reflecting the will of minor children and the desires of minor children, it appears to the court that it behooves anyone responsible for the care and custody of a minor child to analyze with great care the thoughts, desires and feelings of said minor when the child has attained a sufficient age to analyze, with judgment, his or her feelings. The court is impressed with the maturity of this child and the analytical judgment of the said child. The court found that the bond of affection presently existing between the child and her mother is of such importance to this child that it must be fostered and not destroyed in spite of the fact that this court found sufficient evidence that the child was in fact neglected by her mother. The strong affection between the mother and the child hereinabove referred to was manifested to the court and to the probation officer of the court on separate occasions as reflected in the confidential report to the court by the probation officer. The neglect, as the record will reflect, is due *517 to the illness of the mother. She is presently receiving medical care. Further, the conversation with the said child reflects that she would not, under any circumstances, be receptive to living with her father in Birmingham, Alabama, the place of his residence. When this subject was discussed with the child and the child was advised by the court that a possibility existed that she might live with her father, the child’s reaction was strongly in the negative to the point of almost panic. She simply would not want, under any circumstances, to live with her father. The court is of the opinion that forcing the child to so do, at this time, would result in emotional damage to the child, under the circumstances.
“It appears to the court, at this time, that it is necessary that the child remain in an appropriate boarding school wherein the educational needs and other needs of the child might be provided with a view that this placement is only temporary until the return of this child to her parent. This court is influenced by the fact that were this child permitted, or ordered, to be taken from this jurisdiction to Birmingham, Alabama, in a strange atmosphere to live with her father and step-mother with whom she has had no contact for the past two years, and be forced to be taken from her mother at this time, irreparable harm might be suffered by this child. The child expressed a strong desire to the court to permit the court to return her to her mother, however, the court is of the opinion that, at this time, this also is unwise.
“The illness of the mother, as the record will reflect, is such that were this child and her mother separated to the extent required by placing this child in custody of the father in Birmingham, Alabama, serious irreparable harm and damage would result to the mother which, in this court’s opinion, would result in ultimate emotional damage to this child.
“Were the court to place this child with her father in Birmingham, Alabama, the court is of the opinion that such action would destroy the mother, destroy the child, and disrupt the home of the father and the step-mother.
“This court is mindful of the fact that the court should not deprive the father or the mother of the child unless absolutely necessary and should place the custody of the child with her father or relative if the mother is unable to properly care for the child. However, the court is concerned with, not only who has the greater right to custody, whose custody right is greater than another’s custody right, but the court must be concerned with an adjudication which, in the court’s opinion, would be in the best interest of the child. * * *
“It is imperative, at this time, that the child remain in New Orleans and that an *519 incentive be provided to the mother to have this child returned to her as early as possible and not to foreclose this possibility to her forever by sending this child out of the State of Louisiana to a foreign jurisdiction and for all practical purposes depriving this mother of any possibility of custody in the future.
"While the child is in the temporary boarding school facility, it would be the hope and desire and plan for this child that visitation would be encouraged by both the mother and the father.
“Custody of minor children is a delicate situation, however, any temporary custody order must be considered only as temporary with the ultimate aim of encouraging the child to be reunited with her mother, under the supervision, control and counseling of the court and its probation staff. The judgment of this court, in the court’s opinion, is in furtherance of this aim at this time.
“While the father of the minor child manifests a desire to have custody of this child placed with him, the record will reflect that the step-mother, at no time, appeared in these proceedings to indicate to the court any concurrence. It is of utmost importance for any court, before considering the suitability of a home, that the step-mother, or a person responsible for the care of that home, should give his or her concurrence. This was noticably absent to the court.
“Through the efforts of the Probation Department of the Juvenile Court, the Department of Public Welfare of the State of Louisiana, and the Associated Catholic Charities, facilities have been made available for the placement of this child in St. Elizabeth’s Childrens Home, an appropriate boarding school facility in the uptown area of New Orleans, Louisiana. It is the court’s opinion that this facility would satisfy all of the requirements for the proper placement of this child consistent with the views expressed hereinabove.”
In upsetting the temporary custody arrangement of the juvenile court, the majority has failed to give full recognition to the main features of this proceeding. As custodian, the mother was tutrix of the child. LSA-C.C. Art. 157, as amended. Upon adjudication, the status of the child as a ward of the court became fixed. 43 C.J.S. Infants § 101, p. 263. Hence, the court was authorized to take custodial action. The temporary custody arrangement adopted by the juvenile court judge was designed to protect the child and, at the same time, permit the trained court staff to work toward returning the child to her mother. The majority, in my opinion, has erred in treating the proceeding only as a contest for custody between St. Elizabeth’s Childrens Home and the father.
For the reasons assigned, I respectfully dissent.